FILED
US DISTRICT COURT
WESTERN DISTRICT
OF ARKANSAS
Jul 31, 2024
OFFICE OF THE CLERK

AO 106A (08/18) Application for a Warrant by Telephone or Other Reliable Electronic Means

# UNITED STATES DISTRICT COURT
for the
Western District of Arkansas

In the Matter of the Search of
*(Briefly describe the property to be searched or identify the person by name and address)*
Samsung S21 cellphone in black case

Case No. 2:24-cm-00053

## APPLICATION FOR A WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:
Samsung S21 cellphone in black case, more particularly described on " Attachment A" .

located in the _____ Western _____ District of _____ Arkansas _____ , there is now concealed *(identify the person or describe the property to be seized)*:
See "Attachment B".

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:
- ☑ evidence of a crime;
- ☑ contraband, fruits of crime, or other items illegally possessed;
- ☑ property designed for use, intended for use, or used in committing a crime;
- ☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 18 USC 2252A | Possession of or Access with Intent to View Child Pornography |

The application is based on these facts:
See Affidavit of FBI Special Agent Robert Allen

☑ Continued on the attached sheet.
☐ Delayed notice of ____ days *(give exact ending date if more than 30 days:* _____ *)* is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

*Applicant's signature*

Robert Allen, Special Agent FBI
*Printed name and title*

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by _____ *(specify reliable electronic means)*.

Date: 7/31/24

*Judge's signature*

City and state: Fort Smith, Arkansas

Mark E. Ford, United States Chief Magistrate Judge
*Printed name and title*

THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF ARKANSAS

IN THE MATTER OF THE
SEARCH OF:
SAMSUNG S-21 CELLPHONE

Case No. 2:24-cm-00053

### AFFIDAVIT IN SUPPORT OF SEARCH WARRANT

I, Robert Allen, a Special Agent (SA) with the Federal Bureau of Investigation (FBI), being first duly sworn, hereby depose and state as follows:

1. I am a Special Agent currently assigned to the Fort Smith Resident Agency of the Little Rock Division of the FBI. I have been employed as a Special Agent with the FBI for over sixteen years. During my employment with the FBI, I have received training concerning and have participated in the investigation of federal criminal offenses enumerated in Title 18 of the United States Code, specifically, criminal statutes involving the sexual exploitation of minors. Prior to my employment with the FBI, I was employed as a Certified Police Officer by the Van Buren, Arkansas, Police Department for ten years. During my employment as a Van Buren Police Officer, I received training and was involved in investigating criminal offenses. As part of my duties, I am assigned to the River Valley Child Exploitation Task Force operating out of the FBI Resident Agency (RA) in Fort Smith, Arkansas. I investigate criminal violations relating to crimes against persons utilizing the Internet, the sexual exploitation and trafficking of minor children through the Internet, child exploitation and child pornography including violations pertaining to the illegal production, distribution, online enticement, transportation, receipt, and possession of child pornography. I have received training in the area of Internet crimes against persons, sexual exploitation, and trafficking of minor children through the Internet,

1

child pornography and child exploitation, and have had the opportunity to observe and review numerous examples of venues individuals utilize to advertise and exploit minor children for sexual encounters via the Internet as well as child pornography in all forms of media including computer media. I have also participated in the execution of numerous search warrants and arrest warrants, several of which involved Internet crimes against persons, sex trafficking of minors, child exploitation and/or child pornography offenses.

2. As part of this my duties with FBI, I investigate criminal violations relating to child exploitation and, child pornography, human trafficking, and coercion and enticement, in violation of 18 U.S.C. §§ 2251, 2422(a) and (b), 2252(a), and 2252A.

3. The statements in this affidavit are based on personal observations, training and experience, investigation of this matter, and information obtained from other agents and witnesses. Because this affidavit is being submitted for the limited purpose of securing a search warrant, this affiant has not included each and every fact known to me concerning this investigation.

4. This affidavit is being submitted in support of an application for a search warrant for evidence, fruits, and instrumentalities of the forgoing criminal violations, which relate to the knowing possession of or access with intent to view child pornography in violation of Title 18, United States Code, Section 2252A(a)(5)(B). The property to be searched is a **Samsung S21 cellphone** described in the following paragraphs and in Attachment A. This affiant requests the authority to search and/or examine the seized item for the items specified in Attachment B, as instrumentalities, fruits, and evidence of crime.

## STATUTORY AUTHORITY

5. This investigation concerns alleged violations of Title 18, United States Code, §2252A(a)(5)(B), relating to possession or access with intent to view child pornography.

   a. 18 U.S.C. § 2252A(a)(5)(B) prohibits a person from knowingly possessing or knowingly accessing with intent to view, any book, magazine, periodical, film, video-tape, computer disk, or any other material that contains an image of child pornography that has been mailed, or shipped or transported using any means or facility of interstate or foreign commerce or in or affecting interstate or foreign commerce by any means, including by computer, or that was produced using materials that have been mailed, or shipped or transported in or affecting interstate or foreign commerce by any means, including by computer.

   b. The term "minor," as defined in 18 U.S.C. § 2256(1), refers to any person under the age of eighteen years.

   c. The term "sexually explicit conduct," 18 U.S.C. § 2256(2)(A)(i-v), is defined as actual or simulated (a) sexual intercourse, including genital-genital, oral-genital, anal-genital, or oral-anal, whether between persons of the same or opposite sex; (b) bestiality; (c) masturbation; (d) sadistic or masochistic abuse; or (e) lascivious exhibition of the genitals or pubic areas of any person.

   d. The term "visual depiction," as defined in 18 U.S.C. § 2256(5), includes undeveloped film and videotape, data stored on computer disc or other electronic means which is capable of conversion into a visual image, and data which is capable of conversion into a visual image that has been transmitted by any means, whether or not stored in a permanent format.

e. The term "computer," as defined in 18 U.S.C. § 1030(e)(1), means an electronic, magnetic, optical, electrochemical, or other high speed data processing device performing logical, arithmetic, or storage functions, and includes any data storage facility or communications facility directly related to or operating in conjunction with such device.

f. The term "child pornography," as defined in 18 U.S.C. § 2256(8), means any visual depiction, including any photograph, film, video, picture, or computer-generated image or picture, whether made or produced by electronic, mechanical, or other means, of sexually explicit conduct, where:

   i. the production of such visual depiction involves the use of a minor engaging in sexually explicit conduct;

   ii. such visual depiction is a digital image, computer image, or computer-generated image that is, or is indistinguishable from, that of a minor engaging in sexually explicit conduct; or

   iii. such visual depiction has been created, adapted, or modified to appear that an identifiable minor is engaging in sexually explicit conduct.

## BACKGROUND ON COMPUTERS AND CHILD PORNOGRAPHY

6. Based on my knowledge, training, and experience in child exploitation and child pornography investigations, and the experience and training of other law enforcement officers with whom I have had discussions, computers, computer technology, and the Internet have revolutionized the manner in which child pornography is produced and distributed.

7. Computers basically serve five functions in connection with child pornography:

4

production, communication, distribution, storage, and social networking.

8. With digital cameras, images of child pornography can be transferred directly onto a computer. A modem allows any computer to connect to another computer through the use of telephone, cable, or wireless connection. Through the Internet, electronic contact can be made to literally millions of computers around the world.

9. The computer's ability to store images in digital form makes the computer itself an ideal repository for child pornography. The size of the electronic storage media (commonly referred to as the hard drive) used in home computers has grown tremendously within the last several years. These drives can store thousands of images at very high resolution.

10. The Internet affords individuals several different venues for meeting on another, obtaining, viewing, and trading child pornography in a relatively secure and anonymous fashion.

11. Individuals also use online resources to retrieve and store child pornography, including services offered by Internet Portals such as Yahoo! and Hotmail, among others. The online services allow a user to set up an account with a remote computing service that provides e-mail services as well as electronic storage of computer files in any variety of formats. A user can set up an online storage account from any computer with access to the Internet. Evidence of such online storage of child pornography is often found on the user's computer. Even in cases where online storage is used, however, evidence of child pornography can be found on the user's computer in most cases.

12. As with most digital technology, communications made from a computer are often saved or stored on that computer. Storing this information can be intentional, for example, by saving an e-mail as a file on the computer or saving the location of one's favorite websites in "bookmarked" files. Digital information can also be retained unintentionally. Traces of

the path of an electronic communication may be automatically stored in many places, such as temporary files or ISP client software, among others. In addition to electronic communications, a computer user's Internet activities generally leave traces in a computer's web cache and Internet history files. A forensic examiner often can recover evidence that shows whether a computer contains peer-to-peer software, when the computer was sharing files, and some of the files that were uploaded or downloaded. Computer files or remnants of such files can be recovered months or even years after they have been downloaded onto a hard drive, deleted, or viewed via the Internet. Electronic files downloaded to a hard drive can be stored for years at little or no cost. Even when such files have been deleted, they can be recovered months or years later using readily available forensic tools. When a person "deletes" a file on a home computer, the data contained in the file does not actually disappear; rather, that data remains on the hard drive until it is overwritten by new data. Therefore, deleted files, or remnants of deleted files, may reside in free space or slack space -- that is, in space on the hard drive that is not allocated to an active file or that is unused after a file has been allocated to a set block of storage space -- for long periods of time before they are overwritten. In addition, a computer's operating system may also keep a record of deleted data in a "swap" or "recovery" file. Similarly, files that have been viewed via the Internet are automatically downloaded into a temporary Internet directory or "cache." The browser typically maintains a fixed amount of hard drive space devoted to these files, and the files are only overwritten as they are replaced with more recently viewed Internet pages. Thus, the ability to retrieve residue of an electronic file from a hard drive depends less on when the file was downloaded or viewed than on a particular user's operating system, storage capacity, and computer habits.

## CELLULAR PHONES AND CHILD PORNOGRAPHY

13. Based on my knowledge, training, and experience in child exploitation and child pornography investigations, and the experience and training of other law enforcement officers with whom I have had discussions, cellular phones have likewise revolutionized the manner in which child pornography is produced and distributed.

14. Cellular phones ("cell phones") are exceptionally widespread. The Central Intelligence Agency estimates that in 2016 there were 416 million cell phone subscribers in the United States. Cell phones increasingly offer features such as integrated digital cameras, the ability to store hundreds of digital images, and the ability to access and browse the Internet.

15. In my training and experience, the ready availability and personal nature of cell phones has led to their frequent use in the commission of child pornography offenses. Individuals with a sexual interest in children will often use their cell phone to browse the Internet and to distribute, receive, and store child pornography files. Individuals producing child pornography will also frequently use the integrated digital camera within a cell phone to produce the images, and then store the images both on the phone and on other devices – such as computers and computer storage media.

16. Cell phones, like other computer systems, will frequently retain data relating to activities, such as Internet browsing history, digital images, and other digital data, that can remain stored for a long period of time.

## SPECIFICS OF SEARCH AND SEIZURE OF COMPUTER SYSTEMS AND CELL PHONES

17. Searches and seizures of evidence from computers and cell phones commonly require

7

agents to download or copy information from the devices and their components or seize most or all computer items (computer hardware, computer software, and computer related documentation) to be processed later by a qualified computer expert in a laboratory or other controlled environment. This is almost always true because of the following two reasons:

a. Computer storage devices (like hard disks, diskettes, tapes, laser disks, magneto opticals, and others) can store the equivalent of thousands of pages of information. Especially when the user wants to conceal criminal evidence, he or she often stores it in random order with deceptive file names. This requires searching authorities to examine all the stored data that is available in order to determine whether it is included in the warrant that authorizes the search. This sorting process can take days or weeks, depending on the volume of data stored, and is generally difficult to accomplish fully on-site.

b. Searching computer systems and cell phones for criminal evidence is a highly technical process requiring expert skill and a properly controlled environment. The vast array of computer hardware and software available requires even computer experts to specialize in some systems and applications, so it is difficult to know before a search which expert should analyze the system and its data. The search of a computer system is an exacting scientific procedure that is designed to protect the integrity of the evidence and to recover even hidden, erased, compressed, password-protected, or encrypted files. Since computer evidence is extremely vulnerable to tampering or destruction (which may be caused by malicious code or normal activities of an operating system), the controlled environment of a laboratory is essential to its complete and accurate analysis.

18. In order to fully retrieve data from a computer system, the analyst needs all magnetic storage devices as well as the central processing unit ("CPU"). In cases involving child pornography where the evidence consists partly of graphics files, the monitor(s) may be essential for a thorough and efficient search due to software and hardware configuration issues. In addition, the analyst needs all the system software (operating systems or interfaces and hardware drivers) and any applications software which may have been used to create the data (whether stored on hard drives or on external media). Furthermore, because there is probable cause to believe that the computer, its storage devices, and cell phones are all instrumentalities of crimes, within the meaning of 18 U.S.C. §§ 2251 through 2256, they should all be seized as such.

## PROBABLE CAUSE

19. On May 17, 2024, an online tip was received by the FBI National Threat Operations Center (NTOC), regarding possession of child pornography by SAMUEL LEE CROSS, date of birth 07/15/2003, telephone number 479-216-7761, located in Mena, AR, 71953.

20. The person reporting the information, Witness 1, submitted the following text: "Samuel (CROSS) told me that he was addicted to child pornography in October or November of 2023. I've known for over a year that he was having issues with porn addiction, but he did not specify that it was children until 2023. I was disgusted and concerned, and I told him to seek help. He was admitted to mental hospital briefly and was counseled for a few months and then he stopped going. He was a history of committing rape and sexual assault in his past and I just don't trust what he could do."

21. Witness 1 was identified and interviewed by the FBI. Witness 1 explained she grew up with CROSS, and then she went to college. She advised that CROSS was recently

9

admitted to a hospital, and he was concerned about someone getting into his cellphone. CROSS admitted to Witness 1 that he had child pornography on the device. She stated that CROSS had told her that he had a pornography addiction that got worse, and he now watched child pornography. Witness 1 advised that CROSS went to a mental facility due to self-harm, depression, and for suicidal issues. CROSS stopped getting treatment, and she had distanced herself from him. Witness 1 also advised that CROSS had admitted to her that he raped a minor when he was in middle school and stated it was the daughter of someone staying with CROSS'S family. CROSS stated this happened between 2016 and 2018.

22. Investigators located CROSS mowing the lawn in the back yard of his residence, 97 Sarah Way, Mena, Arkansas. CROSS was shown FBI identification, and he immediately put his right hand into his front, right pocket, which appeared to hold a cell phone. CROSS removed his hand from his pocket, and Affiant explained that the FBI had received information about inappropriate Internet activity by CROSS. CROSS's his right hand again went into his front right pocket. Affiant explained to CROSS that the inappropriate Internet activity was accessing child pornography, and again CROSS's hand went into his right front pocket. CROSS was advised that he was not under arrest and that he was not obligated to talk to the FBI. CROSS agreed to talk, and he along with investigators, moved to bench in a shaded area.

23. CROSS was advised again that he was not obligated to talk to the FBI, and that if he did talk to the FBI, he could choose to not discuss any subject he did not wish to talk about. CROSS's mother then came out the back door, and CROSS advised he wanted to speak to investigators alone and she went back inside. CROSS was asked if investigators

10

were correct in believing he had accessed child pornography on his phone, and he said, "yes," while nodding his head. Investigators asked for clarification in what type of child pornography, and CROSS advised it was mostly teenage pornography but sometimes he came across younger pornography. CROSS admitted that he had a pornography addiction that led to him viewing what he knew to be child pornography.

24. CROSS stated he preferred female teenagers around fourteen (14) or fifteen (15) years old, who do video sex acts that other people record and post online. CROSS advised he looks at child pornography nightly but then deletes the images/videos. CROSS was asked if there would still be child pornography (CP) on his phone, and CROSS advised there would be child pornography in his recycle bin folder of his phone.

25. CROSS continued to cooperate with investigators and explained that he had issues with depression and had sought treatment. CROSS explained that he went to college after high school but later quit. He went to a treatment facility for his depression and received some therapy. He also stated he had a friend that he confided in and that he told his friend about his accessing and viewing child pornography. CROSS referred to his friend saying "her" but did not provide a name. He further explained he had had a pornography addiction since he had access to the Internet, and it eventually led to viewing child pornography.

26. CROSS then took out his phone, and it appeared to Affiant he was going to open the phone, possibly to show investigators. Investigators then took the phone from CROSS and advised him they had to seize the phone due to his admission of contraband being on the phone.

11

27. CROSS advised he was aware some people use links that sell child pornography content for Bitcoin, but he denied trading or buying any child pornography. He named "duck-duck-go" as a messaging application that could be used to find child pornography. CROSS advised he used search terms "JB" and "CP" to find child pornography. Investigators asked what the search terms stood for, and CROSS explained JB was for "jailbait" and CP was for "child porn". CROSS stated he viewed child pornography the night prior and had not yet deleted what he accessed and viewed, admitting it would still be on his phone.

28. Investigators asked CROSS for his access PIN to his phone and reminded him that he did not have to provide it if he did not wish to. CROSS provided the swipe pattern to access his phone (4-3-8-7-5-1-9-2-6), which investigators verified, and the phone was set to airplane mode by investigators.

29. Investigators advised CROSS that they would have to get a search warrant to dump his phone and then review all the material on the phone to determine what kind of child pornography (CP) was on the device. He was advised that he could face charges for accessing child pornography and having it on his phone. He was also advised that if he was not charged, his phone would be returned to him.

30. CROSS admitted he knew it was wrong to look at child pornography, and he would often feel bad afterwards. He stated his addiction would get the best of him and he could not stop viewing the child pornography. CROSS admitted he came across child pornography as young as about one year old and it "turned his stomach". He was adamant he did not seek or like to view toddler or infant child pornography. CROSS admitted he knew it was illegal to access and view child pornography, and he would sometimes fear he would

get caught. However, when law enforcement had not shown up for the several years he had been viewing the child pornography, he felt like he was getting away with it. CROSS denied any hands-on activity with a child.

31. CROSS was provided a copy of the signed property receipt, and CROSS provided phone number (479)216-7761 for his phone.

32. The subject device, CROSS's Samsung S21 cellphone is currently being held in evidence room of the Fort Smith FBI office, which is located in the Western District of Arkansas.

## CONCLUSION

33. *Nature of examination.* Based on the foregoing, and consistent with Rule 41(e)(2)(B), the warrant I am applying for would permit seizing, imaging, or otherwise copying storage media that reasonably appear to contain some or all of the evidence described in the warrant and would authorize a later review of the media or information consistent with the warrant. The later review may require techniques, including but not limited to computer-assisted scans of the entire medium, that might expose many parts of a hard drive to human inspection in order to determine whether it is evidence described by the warrant.

34. Based on the above facts, probable cause exists to believe that, located within the **SUBJECT DEVICE**, is evidence of Title 18, United States Code, Section 2252A(a)(5)(B), Possession of or Access with Intent to View Child Pornography. Your Affiant prays upon this honorable court to issue a warrant for the **SUBJECT DEVICE** for the items listed in Attachment B that constitute evidence, fruits, and instrumentalities of violations of the aforementioned statute.

_____
Robert Allen
Special Agent
Federal Bureau of Investigations

Subscribed and sworn before me via telephone this __31__ day of July 2024.

_____
Mark E. Ford
United States Magistrate Judge
Western District of Arkansas

14

## ATTACHMENT A

**Property to Be Searched**
**SUBJECT DEVICE (Samsung S21 cellphone, in black case)**
Specifically pictured in the below 4 pictures.









## ATTACHMENT B
### Particular Things to be Searched for and Seized

1. Any and all images of suspected child pornography and files containing images of suspected child pornography, any and all images believed to be an attempt to produce child pornography, in any form wherever it may be store or found including, but not limited to:
   a. Originals, thumbnails and copies of visual depictions of minors engaged in sexually explicit conduct;
   b. Videos and other recordings of visual depictions of minors engaged in sexually explicit conduct;
   c. Images of children, nude or otherwise, possessed, sent, received, or via message, emails, or otherwise stored on the phone;
   d. Internet history, including CACHE memory related to internet searches for child pornography or websites that could pertain such.

2. In searching the data, the computer personnel may copy all of the data contained in the computer equipment and storage devices. In doing so, the search is authorized to allow the computer personnel to recover and examine: all images contained upon the **SUBJECT DEVICE** wherever they may be found, a search of unallocated spaces for images related to child pornography, a search to identify Peer-to-Peer programs, a search of terms related to child pornography, and any other search and examination that would reveal the existence of child pornography on the **SUBJECT DEVICE** including deleted, hidden, accessing applications (apps), and/or encrypted data. Emails, data files, and any other electronic information related to the ownership of the seized electronic media may be copied, imaged and examined during purposes of conducting the forensic examination.